IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


| | | |
|---|---|---|
| RICKY CASTILLO JALOMO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:15-CV-125 |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |


**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Before the Court is the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner RICKY CASTILLO JALOMO.   For the following reasons, petitioner's habeas application should be DENIED.


I.
STATEMENT OF THE CASE

On April 2, 2007, petitioner was charged in County Court at Law No. 2 in Randall County, Texas, with the Class A misdemeanor offense of assault causing bodily injury for a March 18, 2007 altercation.   *State v. Jalomo*, No. 2007-5309-2.   The case was subsequently dismissed when it was refiled as a felony.

On June 20, 2007, petitioner was charged by grand jury Indictment in Randall County, Texas, with the second degree felony offense of aggravated assault in violation of section 22.02 of

the Texas Penal Code.[1]   *State v. Jalomo*, No. 19,096-C.   The Indictment alleged petitioner, on

or about March 18, 2007:

> [D]id then and there intentionally and knowingly cause bodily injury to Ricardo
> Ballin, by hitting him with a stick, and did then and there intentionally and
> knowingly use and exhibit a deadly weapon, to-wit: a stick, that in the manner of
> its use and intended use was capable of causing death and serious bodily injury to
> Ricardo Ballin, during the commission of said assault.

On July 18, 2008 (approximately 13 months after the indictment), petitioner was rendered

a paraplegic as the result of a shooting incident. On May 13, 2009, after defense counsel advised

the State of the extent of petitioner's injuries and his need for extensive medical treatment, the

State filed a motion to dismiss the criminal action against petitioner for the following reason:

"While this cause was pending the defendant was shot twice during a drive-by.   Medical records

obtained by the State reveal that the defendant is [] now a paraplegic and suffers additional serious

health problems as a result of the wounds."   The state trial court granted the State's motion and

dismissed the criminal cause against petitioner.

On September 25, 2009, petitioner was arrested in Randall County for a Class B

misdemeanor criminal trespass offense, and on October 2, 2009 was charged with the offense in

Randall County Court at Law No. 2.[2]

On February 17, 2010, petitioner was again charged by grand jury Indictment in Randall

County, Texas, with the second degree felony offense of aggravated assault for the March 18, 2007

altercation.   *State v. Jalomo*, No. 21,317-C.   The new Indictment tracked the exact language of

the prior June 20, 2007 Indictment.   On August 12, 2010, the State amended the Indictment to

include an enhancement paragraph alleging petitioner had a prior felony aggravated assault

---

[1]During this general time period, petitioner was charged with the 2nd degree felony offense of assault in Potter County, Texas for an incident that took place on April 14, 2007 involving the same victim.   Petitioner was charged with the offense by Complaint on May 1, 2007, and by Indictment on June 21, 2007.   On April 23, 2008, after seating a jury for petitioner's trial in Potter County, the State dismissed the Potter County charges against petitioner.   *State v. Jalomo*, No. 55,714-C.

[2]Petitioner subsequently pleaded guilty and was sentenced to three (3) days in county jail and assessed an $800 fine.

conviction for purposes of enhancing petitioner's sentence.

On August 20, 2010, petitioner filed a motion to dismiss the Indictment for a violation of petitioner's constitutional right to a speedy trial.    In his motion, petitioner asserted, *inter alia*, that the "State [had] failed to honor its agreement to terminate its efforts to prosecute [petitioner]" (citing to the State's May 13, 2009 motion to dismiss), and was "reneging on its agreement."    On August 23, 2010, after a pre-trial hearing during which petitioner and the lead prosecutor in the first case filed testified, the state trial court denied petitioner's motion.

On August 24-25, 2010, petitioner was tried before a jury for the indicted offense in the 251st Judicial District Court of Randall County.    On August 25, 2010, a jury found petitioner guilty of the offense of aggravated assault as alleged in the Indictment and, on August 26, 2010, assessed petitioner's punishment at 20 years confinement in the Texas Department of Criminal Justice, Correctional Institutions Division, and a $2,500 fine.    Judgment was entered that same date, with the trial court's signature being affixed August 31, 2010.

Petitioner, represented by the same counsel as at trial, filed a direct appeal of his conviction and sentence to the Court of Appeals for the Seventh District of Texas.    On January 25, 2012, the state intermediate appellate court affirmed petitioner's conviction.    *Jalomo v. State*, No. 07-10-00345-CR.    On April 5, 2012, petitioner, through the same counsel, sought review of the affirmance of his conviction by filing a petition for discretionary review with the Texas Court of Criminal Appeals.    On May 16, 2012, that court refused petitioner's petition.    *Jalomo v. State*, PD-239-12.    On October 11, 2012, counsel advised petitioner by correspondence that he had "not heard anything from the Court of Criminal Appeals" but would let petitioner know when he did. At some point prior to February 11, 2014, petitioner inquired of counsel as to the status of his petition for discretionary review, prompting counsel to send correspondence to the court requesting information on the case.    On February 18, 2014, the court responded advising the court had

refused the petition for discretionary review on May 16, 2012.    On March 1, 2014, counsel forwarded the court's response to petitioner in correspondence.    Petitioner did not seek further review of his conviction and sentence by filing a petition for a writ of certiorari in the Supreme Court of the United States, which would have been untimely.

On April 14, 2014, petitioner purportedly placed a *pro se* state application for habeas corpus relief in the state prison mailing system, such application being received and file-stamped on April 22, 2014.    By his state habeas application, petitioner alleged:    (1) he was denied notice of the Texas Court of Criminal Appeals' ruling in the petition for discretionary review proceedings; (2) was thus denied the right to continue his direct appeal by filing a petition for a writ of certiorari; (3) and as petitioner was represented in the petition for discretionary review proceeding, was denied effective assistance of trial counsel because counsel knew or should have known of the court's ruling at a date earlier than almost two (2) years after the ruling.    Petitioner alleged the court's failure to provide notice of its ruling and/or counsel's failure to conduct a timely inquiry and keep him informed of the status of the proceeding "destroyed [his] federal tolling periods for habeas corpus relief" and denied him his right to file a timely federal habeas application.    Petitioner requested the court "recall the mandate and return [petitioner] to his original position as it existed on May 16, 2012, the date his petition for discretionary review was refused by the court.    On June 11, 2014, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order.    *In re Jalomo*, No. 81,317-01.

On February 13, 2015, petitioner purportedly placed a second state application for habeas corpus relief in the state prison mailing system, such application being received and file-stamped on February 24, 2015.    By this second state habeas application, petitioner challenged his conviction alleging: (1) multiple grounds of ineffective assistance of trial counsel; and (2) prosecutorial misconduct.    On March 25, 2015, the Texas Court of Criminal Appeals denied

petitioner's second state habeas application without written order.    *In re Jalomo*, No. 81,317-02.

On April 2, 2015, petitioner purportedly placed the instant federal application for habeas corpus in the prison mailing system.    Petitioner's application was received by the Dallas Division Court and file-stamped on April 7, 2015.    The Dallas Division subsequently transferred the case to this Court.

Petitioner acknowledges his state conviction "became final" more than a year before he filed his federal habeas petition by answering Question 26 on page 9 of the form habeas corpus petition.    Even so, petitioner contends his federal habeas petition is not time-barred because:

> The Clerk of the Court of Criminal Appeals failed to provide petitioner or petitioner's appellate counsel (Chuck Hester) service of process of the Court's decision on Petition for Discretionary Review.    Thus, petitioner was not notified of the Court's decision until March 1, 2014 and petitioner is entitled to Equitable Tolling.

On July 15, 2015, respondent filed an Answer asserting petitioner's habeas application should be dismissed as time barred or, alternatively, because petitioner's claims lack merit.    On October 19, 2015, petitioner filed a reply to respondent's answer wherein he argues his federal habeas application is not barred by the 1-year statute of limitations because he is entitled to equitable tolling of the limitation period, and/or that he did not discover the factual predicate of certain of his claims until a date subsequent to his conviction becoming final and, therefore, the statute of limitations should not begin to run until the date he discovered his claims.    Petitioner also asserts his claims are meritorious.

## II.
## TIME BAR

The Court acknowledges the following statement from an unpublished Fifth Circuit opinion issued March 5, 2002:

> We have never held that a habeas petitioner who, represented by counsel, failed to

receive timely notice of a state court's ruling should be entitled to equitable tolling as a result.   There is no evidence that [petitioner] could not have called his attorney in order to learn the status of the state court rulings, and there is no indication that [petitioner's] father, who had contacted [petitioner's] attorney regarding [petitioner's] appeal, could not have made a similar inquiry about his state petition. Thus, [petitioner] was not prevented in some extraordinary way from asserting his rights.

*Lewis v. Cockrell*, 2002 WL 432658 (5th Cir. 2002). Even so, under the facts of this case as set forth above, the Court finds an issue exists as to whether equitable tolling should apply to a portion of the time period during which petitioner had not received notice of the Texas Court of Criminal Appeals' refusal of his petition for discretionary review.   Consequently, the Court declines to make a determination that petitioner's federal habeas application is time barred and, instead, addresses the merits of the grounds petitioner raises in his habeas petition.

III.
<u>PETITIONER'S ALLEGATIONS</u>

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. Petitioner was denied his constitutional right to a speedy trial;

2. Petitioner was denied his constitutional right to effective assistance of counsel because trial counsel failed to:

   a. seek to withdraw due to a conflict of interest prior to the pretrial hearing on the motion to dismiss for a speedy trial violation and was thus precluded from testifying as a fact witness at the hearing;

   b. challenge the State's use of false and misleading testimony at this pretrial hearing to dismiss the case; and

   c. request the appointment of a medical expert to challenge/contradict the testimony of the State's medical expert at trial.

3. The State committed prosecutorial misconduct by failing to correct false and misleading testimony at petitioner's pretrial hearing on the motion to dismiss for denial of his right to a speedy trial.

IV.

STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:

1.     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2.     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).    A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.    *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).    A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).    A determination of a factual issue made by a state court shall be presumed to be correct.    28 U.S.C. § 2254(e)(1).    The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485.    When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, that is entitled to this presumption.    *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997).

Whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington v. Richter*, 562 U.S. 86, (2011).   Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.   *Id*.   This is so whether or not the state court decision reveals which of the elements, in a multi-part claim, it found insufficient.   Section 2254(d) applies when a "claim," not a component of one, has been adjudicated.   *Id.*

Here, petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence alleging the same grounds alleged in the instant federal habeas petition. The Court of Criminal Appeals denied petitioner's state habeas application on March 25, 2015 without written order.   *Ex parte Jalomo*, App. No. WR 81,317-02.   The ruling of the Texas Court of Criminal Appeals constitutes an adjudication of petitioner's claims on the merits. *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).   Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court's decision that petitioner was not denied his right to a speedy trial, was not denied effective assistance of counsel during pretrial or at trial, was not denied an unidentified constitutional right due to prosecutorial misconduct, was based on an unreasonable determination of the facts in light of the evidence before the state court, or was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

## V.
## MERITS

As noted in respondent's answer, petitioner, in his habeas application, did not allege, much less prove, the threshold standards to obtain federal habeas relief.   Instead, petitioner merely repeated the same allegations from his second state habeas application without attempting to show in what way the state court's denial of relief was based on an unreasonable application of federal law as determined by the United States Supreme Court, or on an unreasonable determination of

facts in light of the evidence.    In his reply to respondent's answer, however, petitioner argues he has demonstrated the state court's adjudication of his claims was unreasonable.[3]

## A.    SPEEDY TRIAL VIOLATION

Petitioner asserted, on both direct appeal and collateral review/state habeas proceedings, that his right to a speedy trial was violated when he was tried on the second indictment.    The Texas Court of Criminal Appeals denied petitioner habeas relief on the merits of his claim, but did not issue a written order explaining the bases for its determination that petitioner's claim lacked merit.    The Seventh District Court of Appeals, however, included a lengthy analysis of petitioner's speedy trial claim in its opinion utilizing the federal standard set forth in *Barker v. Wingo*, 407 U.S. 514 (1972) for determining whether a defendant's constitutional right to a speedy trial has been violated.[4]

In his reply, petitioner contends he has met the AEDPA standard because the state courts unreasonably applied clearly established Supreme Court precedent, to wit:    *Barker v. Wingo*, in finding petitioner's right to a speedy trial was not violated.    Specifically, petitioner argues the state court unreasonably applied the third factor of the *Barker* standard, *i.e.*, the defendant's "assertion of his right."[5]

The record before the Court includes the appellate court opinion, and respondent has also reproduced the majority of that opinion in her Answer, including the discussion on petitioner's

---

[3]The Court notes petitioner argues at one point that the state courts' adjudication of his claims under Grounds 2 and 3 was unreasonable because his second state habeas application was "seemingly denied on procedural rather than substantive grounds." As noted above, however, the state court denied his second state habeas application without written order, a determination on the merits of the petition.

[4]When the last state court to decide a prisoner's federal claim on the merits does not state its reasons for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."    *Wilson v. Sellers*, __ U.S.__, 138 S.Ct. 1188, 1192 (2018); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)(determining the bases for later unexplained orders may require consideration of the rationales of a lower court if claims were fully addressed at that level).

[5]*Barker* requires a court balance four factors in analyzing speedy trial violation claims:    (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.

"assertion of right" and the court's conclusion in balancing the *Barker* factors.    [ECF 16, at 15-19].    This Court will not re-state the opinion here except for the portion relevant to petitioner's specific argument:

> The record demonstrates that [petitioner] failed to assert his right to a speedy trial during the twenty-three months in which the original indictment was pending prior to dismissal.
>
> After re-indictment, the record shows that [petitioner] first asserted his right in a motion to dismiss three days before trial.   We also note that [petitioner] moved for a continuance the day before filing his motion to dismiss.   [Petitioner's] rather paltry assertion of this right, by seeking dismissal on the eve of trial, ultimately weighs against [petitioner's] claim that he was denied his right to a speedy trial."
> . . .
>
> In balancing the *Barker* factors, we conclude that the prejudice weighs slightly in favor of [petitioner's] claim, but diminishes when we consider that he acquiesced to the delay.   When we evaluate this diminished prejudice in light of the both neutral and valid reasons which weighed against [petitioner's] claim and [petitioner's] meager assertion of his right to a speedy trial by seeking dismissal on the eve of trial, we conclude that the balancing test ultimately weighs against [petitioner's] contention that his right to a speedy trial was violated on these facts.

Based on the above reasoning, petitioner contends the state appellate court was "punishing" him for not asserting his right to a speedy trial earlier, instead, waiting until the eve of trial to do so. Petitioner argues *Barker* did not set a "specific time frame on when a speedy trial claim must be asserted," nor did *Barker* instruct courts as to how to weigh a petitioner's late assertion of his right. Petitioner concludes the state courts' consideration of the timing of his assertion of his speedy trial rights and the amount of weight given to the timing of that assertion was an unreasonable application of clearly established Supreme Court precedent.

Petitioner is correct in that *Barker* did not impose a certain time frame during which a defendant *has to* right.[6]   However, the diligence of a defendant in asserting his right to a speedy trial is a relevant consideration in weighing the factor, and a "defendant who waits too long to assert his right will

---

[6]*Barker* did articulate one justification for adopting a flexible balancing test is the ability of courts to vary the weight assigned to a defendant's invocation of the right depending on its frequency and forcefulness.   *Barker v. Wingo*, 407 U.S. at 528-29.

have his silence weighed against him." *Divers v. Cain*, 698 F.3d 211, 219 (5th Cir. 2012) (quoting *United States v. Molina–Solorio*, 577 F.3d 300, 306 (5th Cir. 2009)).   Such was the case here. Petitioner did not persistently demand his right to a speedy trial in a diligent and timely manner.[7] Consequently, the state appellate court's determination that he acquiesced to the delay, belatedly asserted his right on the eve of trial, and that this factor ultimately weighed against him in balancing the *Barker* factors, was not objectively unreasonable.

Moreover, the speedy trial inquiry involves a "difficult and sensitive" balancing of each of the related *Barker* factors, which must be considered together, under the particular circumstances of a given case.   *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008).   In carrying out this balancing process, the reviewing court is necessarily provided a wide range of judicial discretion with which to analyze the various factors and any other relevant circumstances, as well as broad discretion in weighing the factors and arriving at a conclusion.   Considering the degree of the reviewing court's discretion, the thorough and accurate analysis set forth here by the state court, and the valid justifications given for reaching its conclusion, this Court cannot find the result of the state court's balancing of the *Barker* factors under the facts of petitioner's case was objectively unreasonable.   Consequently, the undersigned finds petitioner has not met his burden under the AEDPA of demonstrating the state court unreasonably applied federal law or unreasonably determined his federal constitutional claim.

## B.   PROSECUTORIAL MISCONDUCT

At the pre-trial hearing on petitioner's motion to dismiss for a speedy trial violation, the State called as a witness the prosecutor who handled the criminal case against petitioner from June 2007 to May 2009.   The prosecutor testified the original indictment was dismissed because, based

---

[7]Vigorous and timely assertions of the right to a speedy trial are weighed strongly or heavily in the defendant's favor. *See United States v. Cardona*, 302 F.3d 494, 498 (5th Cir. 2002).

on petitioner's medical records, it did not appear petitioner "was going to be a threat anymore." [ECF 17-10 at 33-34]. The prosecutor testified that after being provided an Amarillo Police Department Incident Report "involving [petitioner] in a fracas at a bar," he determined "it sure seemed as though [petitioner] was still a threat." [ECF 17-10 at 34]. The prosecutor testified he presented this report detailing the events that led to petitioner's 2009 arrest for a trespassing offense to the chief prosecutor who then, based on the full history of the case and other related cases, decided to refile the case against petitioner. [*Id.*]

Taking petitioner's grounds out of order, petitioner argues in Ground 3 that the State committed prosecutorial misconduct by failing to correct the alleged "false and misleading" testimony of the prosecutor regarding petitioner's 2009 trespassing offense. In his habeas application, petitioner does not identify in what way or to what extent he contends the prosecutor's testimony was false, nor does he set forth the manner in which he contends the State should have corrected such testimony. Moreover, petitioner does not identify which, if any, constitutional right he contends was violated by the State's alleged failure "to correct said false testimony." In his reply, however, petitioner appears to argue the prosecutor's reference to the 2009 incident as a "fracas" and petitioner's involvement in such was "false and misleading" and should have been corrected by the State. [ECF 20 at 16-17]. In his reply, petitioner appears to argue the State's failure to correct the witness's testimony resulted in either a denial of his constitutional right to due process or the denial of his right to a fundamentally fair trial. Petitioner contends the witness's "mischaracterization of petitioner's involvement in the 'fracas'" and the State's knowing failure to correct the "mischaracterization," harmed him as exemplified by references in the court of appeals' opinion to petitioner being "involved in yet another violent incident" and petitioner being "involved in another violent incident."

The State "denies a criminal defendant due process when it knowingly uses perjured

testimony at trial or allows untrue testimony to go uncorrected.    *Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998).    To prove a due process violation, however, a petitioner must show (1) the testimony in question was actually false, (2) that the prosecutor was aware of the perjury, and (3) that the testimony was material.    *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).    Perjured testimony is "material" only when "there is any reasonable likelihood that the false testimony could have affected" the eventual judgment in the case.

Here, as detailed in respondent's answer, petitioner cannot show the witness's testimony in question was actually false.    Petitioner's complaint as to the language chosen by the witness to describe the events that led to petitioner's arrest and conviction for trespass simply amounts to a difference in interpretation and description of the facts, not false testimony.    The Incident Report describes a deliberate trespass by petitioner in violation of a prior trespass warning, as well as verbally abusive behavior, refusals to comply with direct orders of the police, and other acts of non-compliance on the part of petitioner.    The incident could certainly be characterized as a "noisy disturbance or quarrel" or, as described by the witness, a "fracas."    Moreover, the incident could also be characterized as a "violent incident" as described by the state appellate court, although the violence itself primarily involved petitioner's brother rather than petitioner.    Even so, petitioner has failed to show the existence of testimony that was false, that the State knew the testimony was false, or that the testimony was material to this case.    Moreover, petitioner has failed to show the state court's denial of petitioner's claims was objectively unreasonable.    The undersigned finds petitioner's Ground 3 should be denied.

### C.    EFFECTIVENESS OF COUNSEL

In her July 15, 2015 answer, respondent thoroughly and accurately briefed statutory and case law regarding the applicable standards of review for claims of ineffective assistance of counsel.    [ECF 16 at 20-21].    The Court will not repeat respondent's recitation regarding these

standards of review, except to acknowledge an ineffective assistance of counsel claim requires petitioner to show defense counsel's performance was both deficient and prejudicial under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 689 (1984).   If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, the court need not consider the other prong.   *Id.* at 697.   Moreover, when a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes defense counsel's performance fell within the bounds of reasonableness.   *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

### 1.   Presentation of Petitioner's Speedy Trial Motion to Dismiss

Under Ground 2.a., petitioner argues counsel was ineffective for failing to withdraw as petitioner's counsel prior to the pretrial hearing on petitioner's motion to dismiss for the alleged violation of his right to a speedy trial.   Petitioner argues counsel, due to his representation of petitioner, could not be called as a fact witness at the hearing to testify that the 2009 dismissal of the original 2007 indictment was the "result of a negotiated plea agreement" and that the State's 2010 re-indictment of petitioner for the same offense was in "bad faith" because it was in violation of the alleged prior negotiated agreement or, alternatively, because the re-indictment was in retaliation for petitioner committing another offense, or was the result of "personal animus" between the prosecutor's office and defense counsel.   Petitioner appears to contend counsel knew or should have known, prior to the pre-trial hearing, that his testimony in support of the motion would be necessary to properly present the motion, that he should have withdrawn as petitioner's counsel so that he could testify on petitioner's behalf, and that his failure to do so was deficient. Petitioner concludes such deficient actions on the part of counsel prejudiced him because the lack

of counsel's testimony at the pretrial hearing was critical and resulted in his motion to dismiss for a speedy trial violation being denied and the denial ultimately affirmed on appeal.    Petitioner concludes he was thus denied his right to effective assistance of counsel.

Petitioner's motion to dismiss put before the state trial court the single issue of whether petitioner's constitutional right to a speedy trial was being violated by his prosecution for the charged offense.    In considering the merits of this motion, the state trial court's primary focus was evaluating and balancing the *Barker* factors.    With regard to the second *Barker* factor, *i.e.*, the reason for the delay, if petitioner was able to show the State intentionally caused the delay for the specific purpose of prejudicing the defense or injuring the defendant in some other significant way, then the court could weigh such official bad faith in causing the delay heavily against the State.    *See Doggett v. United States*, 505 U.S. 647, 656 (1992).

Under this ground, petitioner appears to argue counsel was ineffective for failing to take the necessary steps, including withdrawal as petitioner's counsel, to establish the State acted in "bad faith" in this case.    Petitioner does not argue, however, that the State acted in "bad faith" for intentionally holding up prosecution for the purpose of prejudicing the defendant, a proper consideration in a speedy trial analysis.    Instead, petitioner attempts to argue the State acted in "bad faith" for purposes of his speedy trial claim with regard to other alleged bad acts he contends were committed by the State, *i.e.*, violating a purported prior agreement with defense counsel by re-indicting petitioner, re-indicting petitioner in retaliation for committing another offense, and re-indicting petitioner simply because of bad relations between defense counsel and the prosecutor's office.    Even assuming, solely for purposes of argument, that counsel's testimony could have established any of these alleged bad acts occurred, such testimony would not have shown, for purposes of a speedy trial claim, that the State acted in "bad faith" by intentionally causing the delay in this case for the specific purpose of prejudicing the defense or injuring the defendant in

some other significant way.    Petitioner cannot show counsel was deficient for failing to withdraw to enable him to testify on petitioner's behalf for the speedy trial motion to dismiss regarding what petitioner contends were other bad acts of the State.    Nor can petitioner show he was prejudiced by counsel's failure to withdraw by showing counsel's withdrawal and testimony would have resulted in petitioner's motion to dismiss being granted.    Moreover, petitioner has not shown the state courts' determination of this ground was objectively unreasonable.    Thus, the undersigned finds petitioner's ground 2.a. should be denied.

Under Ground 2.b., petitioner argues counsel was ineffective for failing to challenge what he contends was the State's use of false and misleading testimony at the pretrial hearing on the alleged speedy trial violation.    (*See Prosecutorial Misconduct* under Section V.B. above). Petitioner appears to argue counsel should have used the Incident Report from the Amarillo Police Department detailing the events that led to petitioner's September 25, 2009 trespass offense, what petitioner describes as the "best evidence," in order to impeach the testimony of the State's witness that petitioner was involved in a "fracas," and to show the trespass offense was the "sole basis" or "sole reason" for the State's 2010 re-indictment of petitioner for the 2007 aggravated assault offense.    Petitioner argues not only that counsel's failure to impeach the testimony with the Incident Report was deficient, but also that he was prejudiced by such deficient actions because counsel's actions resulted in the trial court denying his motion to dismiss for a speedy trial violation and that denial ultimately being affirmed on appeal.    Petitioner concludes he was thus denied his right to effective assistance of counsel.

As set forth in the *Prosecutorial Misconduct* discussion above, the Court finds the witness's testimony that petitioner was involved in a "fracas" in September 2009 was not false testimony.    While counsel could have questioned the witness as to the description of the events set out in the Incident Report, doing so would not have necessarily "impeached" the witness or

diminished the credibility of his testimony.    Nor would questioning the witness with the Incident Report have more clearly established the prosecution's decision to re-indict was based on petitioner committing a new offense, a point the witness conceded and that is irrelevant to the speedy trial violation claim.    Instead, such questioning could have simply highlighted petitioner's bad behavior during the event to the trial court without any offsetting benefit.    Challenging counsel's decision not to utilize the Incident Report in questioning the witness is simply second-guessing counsel's strategy.    Petitioner has not shown counsel was deficient for failing to use the Incident Report in cross-examining the State's witness.    Nor has petitioner shown he was prejudiced by counsel's failure to do so by showing the trial court's decision to deny petitioner's speedy trial motion to dismiss would have been different if counsel had questioned the witness with the Incident Report.    Moreover, petitioner has not shown the state courts' determination of this claim was objectively unreasonable.    The undersigned finds petitioner's ground 2.b. should be denied.

### 2.  Failure to Hire a Medical Expert to Testify at Trial

During petitioner's trial, the State called the hospital emergency room physician who treated the victim in the early morning hours of March 18, 2007 to testify as a fact witness as to the nature of the victim's injuries, which included multiple facial fractures and a deep laceration. During his brief testimony, the doctor confirmed the victim's injuries were consistent with being hit in or about the face and head with a pool stick, and that the pool stick in evidence, if used in the manner of striking an individual in the head, was capable of causing serious bodily injury or death.    On cross-examination, the doctor acknowledged the victim's injuries were not life threatening and did not require overnight admission.    The doctor testified the victim was treated and released with antibiotics and pain relievers and a referral to a facial surgeon and an

opthalmologist.    [ECF 17-11 at 54-64].

Under Ground 2.c., petitioner argues counsel was ineffective for failing to request the trial court appoint a medical expert for the defense in order to challenge the testimony of the hospital emergency room physician.    Petitioner contends that without a medical expert, it was impossible for the defense to "adequately attack or contradict the testimony" of the emergency room physician.    Petitioner does not identify what portion of the doctor's testimony he believes could have been challenged by a medical expert for the defense, or the manner in which it could have been challenged.    In his reply, petitioner maintains "[c]ounsel's failure to conduct an investigation into the medical evidence was not an objectively reasonable strategic choice."    [ECF 20 at 15].

Petitioner was charged with aggravated assault with a deadly weapon, "a stick, that in the manner of its use and intended use *was capable* of causing death and serious bodily injury." (emphasis added).    The emergency room doctor's testimony simply confirmed the victim was treated at the hospital for injuries that could have been caused by a pool stick, and that a pool stick, if used to strike an individual in the head, was capable of causing serious bodily injury or death. The nature, extent or severity of the victim's injuries was not at issue in this case. Petitioner fails to allege in any way how a medical expert for the defense could have challenged the ER doctor's testimony or how any such testimony would have been favorable to petitioner's defense.    As set forth in detail in respondent's answer [ECF 16 at 23-24], petitioner has not shown counsel's performance was deficient or that he was prejudiced as a result of counsel's failure to request appointment of a medical expert.    Moreover, petitioner has not demonstrated the state court's denial of this claim on the merits was an unreasonable application of federal law.    The undersigned finds petitioner's ground 2.c. should be denied.

VII.
RECOMMENDATION

For the above reasons and the reasons set forth in respondent's Answer filed July 15, 2015 [ECF 16], it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner RICKY CASTILLO JALOMO be DENIED.

VIII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 22, 2018.


LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE


## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.    In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.    Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).    **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation."    Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.    A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court.    *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS*

*Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).